UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VINCENT AND LIEN TANG,<br><br>                    Plaintiffs,<br>     v.<br><br>CALIFORNIA RECONVEYANCE CO., et al.,<br><br>                    Defendants. | Case No.: 10-CV-03333-LHK<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT IN PART WITH PREJUDICE AND IN PART WITH LEAVE TO AMEND<br><br>(re: docket #13) |

Plaintiffs Vincent and Lien Tang, proceeding *pro se*, bring suit against Defendants California Reconveyance Company ("CRC"), JP Morgan Chase Bank, N.A. ("JP Morgan"), Chase Home Finance ("Chase"), and Washington Mutual for damages exceeding $6.5 million. Plaintiffs claim that Defendants violated numerous federal laws by reporting an "alleged debt that has never been validated or proven" to credit reporting agencies. Plaintiffs do not identify the nature of that debt, but Defendants reveal that the "alleged debt" in question relates to Plaintiffs' failure to make payments on an $825,000 residential mortgage. Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, move for a more definite statement under Federal Rule of Civil Procedure 12(e). The Court held a hearing on this matter on December 21, 2010. Because Plaintiffs fail to state a claim, the Court GRANTS Defendants' motion to dismiss, in part with prejudice and in part with leave to amend.

1

Case No.: 10-CV-03333-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

# I. BACKGROUND

### A. Plaintiffs' Complaint

For the most part, Plaintiffs' Complaint includes only vague and conclusory allegations, with little reference to facts. For example, there are repeated statements that "Beginning on or about March 2008 the Defendant [who is not specified] did report to Experian, Trans Union, Equifax credit bureaus that Plaintiffs owe an alleged debt to the Defendant and has continued to do this to date." *See, e.g..* Compl., Part 1, ¶ 1 [dkt. #1]. Plaintiffs do not identify the nature of the "alleged debt," and only repeat the statement that "Defendants violated Plaintiffs civil rights." Attached to the Complaint are various records that Plaintiffs allege demonstrate the violations of federal law in detail. However, these attachments, which appear to be computer-printouts of credit bureau reports, note that Plaintiffs are more than 120 days past due on a 40-year mortgage, on an account that was opened in July 2005. *See* Compl., Exh. A [dkt. #1-1]. These same reports note that Plaintiffs have a balance of more than $900,000, and made their last monthly payment (of $3,195) in October 2009. *Id.* In another exhibit to the Complaint (Exhibit B), Plaintiffs attach a letter addressed to Defendant Chase, seeking "verification of the debt" and production of the "original note."

In the midst of these confusing allegations, Plaintiffs do make one clear factual allegation: "Defendants disclosed a annual percentage rate (APR) of 4.867% when in actuality the annual percentage rate was 5.0009%. See exhibit demonstrating this violation in detail." Compl., Part 6, ¶ 1. Plaintiffs do not identify the referenced "exhibit," however, it appears that Plaintiffs are citing to Exhibit D of the Complaint, a 52-page document entitled "Mortgage Forensic Analysis Report" prepared by an entity called "LogicEase Solutions, Inc." According to that so-called "Report," Plaintiffs were actually charged an APR of 5.009% on their loan, and thus the "disclosed rate" of 4.867% is "not accurate."

### B. Defendants' Motion to Dismiss and Request for Judicial Notice

Defendants submit that the following are the relevant allegations in the Complaint and

judicially noticeable facts. *See* Defs.' Mot. to Dismiss at 2 [dkt. #13].[1] Plaintiffs obtained a residential mortgage loan for $825,000 for real property located at 2739 Clover Meadow Street, San Jose, California 95135. The loan was secured by a deed of trust recorded on or about July 6, 2005 with the Santa Clara County Recorder's Office. The deed of trust identifies Washington Mutual as the lender and the beneficiary, California Reconveyance Company as the trustee, and Plaintiffs as the borrowers. An assignment of the deed of trust was recorded on March 1, 2010, with Bank of America, N.A., assigned all beneficial interest in the deed of trust. Plaintiffs defaulted on the loan, and a Notice of Default and Election to Sell Under Deed of Trust ("NOD") was recorded on or about March 1, 2010. The NOD indicated that, as of February 26, 2010, the amount in arrears on Plaintiffs' loan was $14,954.54. On September 25, 2008, the Office of Thrift Supervision (OTS) closed Washington Mutual Bank and appointed the Federal Deposit Insurance Corporation (FDIC) as receiver. Also on September 25, 2008, JP Morgan entered into a "Purchase and Assumption Agreement" with the FDIC, and took over the assets of Washington Mutual.

Plaintiffs, in an opposition to Defendants' motion to dismiss, note that Defendant CRC filed a Notice of Trustee's Sale on June 2, 2010. *See* Pls.' Opp'n, Exh. B [dkt. #33]. That Notice shows an unpaid balance of $925,328.21.

### C. December 21, 2010 Hearing

At the December 21, 2010 hearing on Defendants' motion, the Court provided Plaintiffs the opportunity to clarify their claims and to identify any additional factual allegations in regard to their claims pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. 1961 *et seq*. Plaintiffs could point to no additional factual allegations, and repeatedly stated that Defendants were colluding with each other to commit fraud. Plaintiffs stated that, without the original copies of the loan documents signed in blue ink, they could not be sure that their loan had not been extinguished or that Defendants had valid rights to their mortgage loan. Plaintiffs further

---

[1] The Court takes judicial notice of these facts pursuant to Federal Rule of Evidence 201, as they are based on public records "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (courts may take judicial notice of matters of public record).

3

Case No.: 10-CV-03333-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

stated that they would not identify their signatures on any loan documents unless they saw the original documents with their signatures in blue ink.

## II. LEGAL STANDARDS

Dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is "proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Services, Inc.*, 606 F.3d 658, 664 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). In considering whether the complaint is sufficient to state a claim, the court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). However, the court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc.* (*In re Gilead Scis. Sec. Litig.*), 536 F.3d 1049, 1055 (9th Cir. 2008). While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.

If the Court concludes that the complaint should be dismissed, it must then decide whether to grant leave to amend. "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## III. DISCUSSION

Plaintiffs bring suit under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692, the Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681, the Truth in Lending Act (TILA), 15 U.S.C. §1601 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. 1961 *et seq.*, and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §2601 *et seq.* Despite this multitude of claims, Plaintiffs fail to plead sufficient facts to state a claim against

4

any Defendant for any violation. As discussed below, Plaintiffs' claims are dismissed, in part with prejudice and in part with leave to amend.

### A. Borrower-related Claims against JP Morgan are Dismissed with Prejudice

The Court agrees with Defendants' argument that Plaintiffs cannot state a claim against Defendant JP Morgan for any "borrower-related" claims (e.g., failure to disclose accurate interest rate). As numerous courts have held, including courts in this district, JP Morgan did not assume borrower-related claims in its purchase and assumption of Washington Mutual (the original lender in this action) from the FDIC. *See, e.g.*, *Hilton v. Wash. Mut. Bank*, 2009 U.S. Dist. LEXIS 100441, *7-9 (N.D. Cal. Oct. 28, 2009) (Illston, J.) (plaintiff's borrower-related claims on a mortgage originally with Washington Mutual were valid against the FDIC, as receiver, but not against JP Morgan because the FDIC was the responsible party for those claims).

Accordingly, to the extent any of Plaintiffs' claims are based on the origination of the Washington Mutual loan in July 2005, those claims are dismissed with prejudice as to Defendant JP Morgan. Specifically, Plaintiffs' TILA and RESPA claims are dismissed with prejudice as to Defendant JP Morgan.

### B. Federal Claims

#### 1. Plaintiffs' Claims Pursuant to FDCPA

The FDCPA prohibits debt collectors from engaging in abusive, deceptive and unfair practices in the collection of consumer debt. The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The definition expressly excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F).

Plaintiffs' FDCPA claims fail for a number of reasons. First, Plaintiffs do not allege that any Defendant is a "debt collector" under the FDCPA, a necessary statutory requirement lacking here. Even had they done so, Defendants would likely be excluded from the definition of "debt

5

collector" since it appears that, from the limited facts alleged in this case, Defendants obtained their interest in the property prior to default. *See Zhuravlev v. BAC Home Loans Servicing, LP*, 2010 U.S. Dist. LEXIS 73874, *5 (N.D. Cal. July 20, 2010) (Seeborg, J.) (a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned).

Second, Plaintiffs' conclusory allegations that "Defendants" or "Defendant" "did violate the FDCPA" by reporting that Plaintiffs owed an alleged debt are insufficient to state a claim. *See Iqbal*, 129 S.Ct. at 1949. Plaintiffs do not identify the alleged debt, nor do they allege any *wrongful* action on the part of any of the Defendants. Reporting a mortgage delinquency and foreclosure is not itself illegal, and Plaintiffs make no other factual allegations as to how Defendants harassed, abused, or oppressed Plaintiffs in the collection of consumer debt.

And third, to the extent their FDCPA claims are based on the initiation of a foreclosure proceeding, Plaintiffs fail to state a claim. This is because "foreclosing on the property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA." *Powell v. Residential Mortg. Capital*, 2010 U.S. Dist. LEXIS 59698 (N.D. Cal. May 24, 2010) (Fogel, J.); *see also Zhuravlev v. BAC Home Loans Servicing, LP*, 2010 U.S. Dist. LEXIS 73874 (N.D. Cal. July 20, 2010) (same); *Jozinovich v. JP Morgan Chase Bank, N.A.,* No. 09-03326, 2010 U.S. Dist. LEXIS 3358, at * 6 (N.D. Cal. Jan. 14, 2010) ("[T]he activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA.").

Accordingly, Plaintiffs' claims under the FDCPA are dismissed with leave to amend. If Plaintiffs choose to amend their Complaint, they must specify with detail the exact allegations of wrongdoing against each Defendant.

### 2. Plaintiffs' Claims under the FCRA

The FCRA prohibits "[a] person" from furnishing information "relating to a consumer" to a Credit Reporting Agency "if the person knows or consciously avoids knowing that the information is inaccurate." 15 U.S.C. § 1681s-2(a). But the FCRA does not provide for a right of action against a furnisher of false information. *See Nelson v. Chase Manhattan Mortgage Corp*., 282 F.3d 1057,

1   1059 (9th Cir. 2002).  Rather, after receiving notice that information is disputed, the furnisher has

2   certain duties:

3       to conduct an "investigation with respect to the disputed information;" to review all

4       relevant information provided by the CRA; to report the results of its investigation to the

5       CRA; and if the investigation finds the information is incomplete or inaccurate to report

6       those results "to all [nationwide] consumer reporting agencies to which the person

7       furnished the information."

8   *Id*. (quoting 15 U.S.C. § 1681s-2(b)).  A consumer then has a private right of action in connection

9   with the performance of these four duties.  *Id*.

10       Plaintiffs allege that "the Defendant" negligently violated the FCRA by furnishing

11   information to credit reporting agencies.  *See* Compl., Part 2-3.  These allegations are fatally short

12   on facts.  For example, Plaintiffs do not allege how the furnished information was in any way

13   "inaccurate."  More importantly, they allege a violation of Section 1681s-2(a), which does not

14   provide for a private right of action.  Section 1681s-2(b) does provide a private right of action, but

15   Plaintiffs do not allege that they disputed the information with the credit reporting agencies, that

16   Defendants received notice of disputed information, that the information was in any way

17   inaccurate, or that Defendants failed to review or investigate the disputed information.  *See Marks*

18   *v. Green Tree Servicing*, 2010 U.S. Dist. LEXIS 119979 (N.D. Cal. Oct. 27, 2010) (dismissing

19   FCRA claim where plaintiff failed to allege that furnished information was inaccurate).

20       Therefore, Plaintiffs have failed to state a claim upon which relief can be granted, and their

21   FCRA claims are dismissed.  Plaintiffs are granted leave to amend, but any amended complaint

22   must specify with detail the exact allegations of wrongdoing against each Defendant.

23       **3.  Plaintiffs' Claims under TILA**

24       Plaintiffs allege that "the Defendants violated TILA and Regulation Z §§ 226.18(c), 18(d),

25   and 22 by failing to disclose certain finance charges and calculating the annual percentage rate

26   based upon improperly calculated and disclosed amounts.  Compl., Part 6-7.  Unlike their other

27   claims, Plaintiffs make the specific factual allegation that Defendants "disclosed a annual

28

7

Case No.: 10-CV-03333-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1   percentage rate of 4.867% when in actuality the annual percentage rate was 5.009%." *Id*.

2   Plaintiffs seek $31,000 in damages.

3       Notwithstanding this one factual allegation, the Court finds that Plaintiffs' claims under

4   TILA still fail to state a claim. First, Plaintiffs do not identify which Defendant allegedly violated

5   TILA by making an inaccurate disclosure of the APR and finance charges. And second, a TILA

6   claim for damages is subject to a one-year statute of limitations. *See* 15 U.S.C. §1640(e). As a

7   general rule, the one-year period runs from the date of the consummation of transaction at issue.

8   *See King v. California*, 784 F.2d 910, 915 (9th Cir. 1986). In this case, the loan transaction

9   occurred in July 2005, but Plaintiff did not file suit until July 29, 2010, more than five years after

10  the loan. However, "the doctrine of equitable tolling may, in the appropriate circumstances,

11  suspend the limitations period until the borrower discovers or had reasonable opportunity to

12  discover the fraud or nondisclosures that form the basis of the TILA action." *See King*, 784 F.2d at

13  915. Plaintiffs have made no allegations as to why equitable tolling is appropriate.

14      Accordingly, Plaintiffs' TILA claims are dismissed. Plaintiffs are granted leave to amend

15  these claims, but they must specify with detail the alleged wrongdoing of each Defendant and must

16  specify with detail how and why equitable tolling is appropriate in these circumstances.

17      **4.   Plaintiffs' Claims under RICO**

18      To state a claim under RICO, a plaintiff must allege the existence of a RICO enterprise, the

19  existence of a pattern of racketeering activity, a nexus between the defendant and either the pattern

20  of racketeering activity or the RICO enterprise, and resulting injury to the plaintiff. To allege a

21  pattern of racketeering activity, a plaintiff must allege two or more predicate acts. *Sun Sav. & Loan*

22  *Ass'n v. Dierdorff*, 825 F.2d 187, 193 (9th Cir. 1987). Such alleged acts must be pled with

23  specificity. *Blake v. Dierdorff*, 856 F.2d 1365, 1370 (9th Cir. 1988). Furthermore, when the

24  alleged racketeering activity sounds in fraud, the complaint must "state with particularity the

25  circumstances constituting fraud or mistake." *See* Fed. R. Civ. P. 9(b).

26      In their $1 million claim for civil violations of RICO, Plaintiffs allege: 1) that they notified

27  Defendants that the alleged debt in question "was not their debt," but Defendants continued to try

28  to collect the debt; and 2) that Defendants "represent themselves as rightful owners to obtain

8

Case No.: 10-CV-03333-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

money and property by means of false pretenses." Compl., Part 8-9.  Plaintiffs do not adequately plead a civil RICO claim under either the Rule 8 or Rule 9(b) pleading standards.  Plaintiffs do not allege the existence of a RICO enterprise and do not identify a pattern of racketeering activity.  Plaintiffs' conclusory allegation that it was not "their debt" is belied by information provided in the Exhibits attached to Plaintiffs' Complaint.  For example, Exhibit A to the Complaint is a computer-printout of a credit bureau report, noting that Plaintiffs: 1) are more than 120 days past due on a 40-year mortgage opened in July 2005; 2) have a balance due on their mortgage of more than $900,000; and 3) made their last monthly payment (of $3,195) in October 2009.  *See* Compl., Exh. A.  In any event, a civil RICO claim, especially one sounding in fraud, requires far more specificity than the conclusory allegations in Plaintiffs' Complaint.

At the December 21, 2010 hearing, Plaintiffs were repeatedly given the opportunity to identify *any* specific factual allegations as to their RICO claims.  Plaintiffs failed to do so.  Accordingly, as leave to amend would be futile, Plaintiffs' claims under RICO are dismissed with prejudice.

### 5.   Plaintiffs' Claim under RESPA

Section 2604 of RESPA contemplates "a good faith estimate of the amount or range of charges for specific settlement services the borrower is likely to incur in connection with the settlement." 12 U.S.C. § 2604.  *See also* 12 U.S.C. § 2603 (contemplating a good faith estimate of charges at or before settlement).  An accompanying regulation, 24 C.F.R. § 3500.7(c)(2) ("Regulation X"), further details that the lender must provide mortgage applicants with such a "good faith estimate" of "each charge which . . . the borrower will normally pay or incur at or before settlement based upon common practice in the locality of the mortgaged property."  Moreover, a violation under the subsection operates as a violation of section 2604. 24 C.F.R. § 3500.7(i).

Plaintiffs allege that Defendants violated RESPA by failing to provide them a timely "good faith settlement" and seek $1,000.  Defendants argue that Plaintiffs cannot state a claim for relief, as the section of RESPA on which they rely (i.e., Section 2604 covering "good faith estimates") does not authorize a private right of action for damages.  Numerous courts in this district have

9
Case No.: 10-CV-03333-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

analyzed RESPA's statutory scheme and persuasively reasoned that Congress did not intend to create a private right of action for the sections that contemplate disclosure violations. *See, e.g.*, *Davenport v. Litton Loan Servicing, LP*, 2010 U.S. Dist. LEXIS 71561 (N.D. Cal. July 16, 2010) (citing cases for proposition that Congress did not intend to create a private right of action for RESPA disclosure violations). Such courts have reasoned that "[t]he inclusion of remedies in certain RESPA provisions and their omission in others is indeed strong evidence that Congress did not intend to provide a private remedy for violations" relating to disclosures. *See Bloom v. Martin,* 865 F. Supp. 1377, 1384 (N.D. Cal. 1994).

Accordingly, Plaintiffs' RESPA claim for failure to provide a good faith estimate is dismissed with prejudice. If Plaintiffs intended to rely on another section of RESPA, they must make this clear in any amended complaint, and must specify, with detail, the exact allegations of wrongdoing against each Defendant.

### IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED in its entirety. Plaintiffs may file an amended complaint consistent with this Order within thirty (30) days of the date this Order is filed. In light of the Court's disposition of Defendants' motion to dismiss, Defendants' alternative motion for a more definite statement is denied as moot.

**IT IS SO ORDERED.**

Dated: December 22, 2010

_Lucy H. Koh_
LUCY H. KOH
United States District Judge